THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH STOJEK, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT KOPEC, Appellant.

Fourth Department, May 21, 1970.

206

*Nathaniel A. Barrell (James P. Manak* of counsel), for appellants.

*Michael F. Dillon, District Attorney (M. Dolores Denman* of counsel), for respondent.

DEL VECCHIO, J. P. The appellants, Robert Kopec and Joseph Stojek, and Guy Zelakowski, a codefendant not involved in this appeal, were indicted and charged with burglary third degree, grand larceny second degree and possession of burglar's instruments. After a jury trial each was convicted of burglary third degree and petit larceny.

It is undisputed that on December 13, 1966, between 10:30 A.M. and about noon a dwelling in the City of Buffalo was entered and certain jewelry and cash taken. A witness who lived across the street testified that at about 10:30 A.M. she saw a light brown four-door car stop in front of the burglarized house; that while a woman remained sitting in the car she saw the defendants Kopec and Zelakowski, whom she had known for several years, enter the house with a third person whom she did not know at the time; that shortly after the three men had entered the house Zelakowski came out, went to the car and after a few seconds re-entered the house. Later she saw the three men come out, enter the car and drive off with defendant Kopec driving. The next day she identified the defendants as the persons who had entered the house. Thereafter informations were laid against them in City Court.

The trial evidence also disclosed that at about noon on the day of the burglary a 1958 Cadillac sedan was stopped for making an illegal left turn. Kopec, the driver, was unable to produce a driver's license or certificate of registration. The officer observed a hammer, an electric drill, a screw driver and a tool box in the car and, being suspicious that it was a stolen car, took the driver and occupants, Guy Zelakowski, Nancy Burgess and Nick Conoglio, to police headquarters for investigation. While at headquarters Nancy Burgess was asked to empty her purse; she did so and among the contents were two rings belonging to the victim of the burglary. These rings were received in evidence over objection that they were seized as a result of an unlawful search. Miss Burgess did not testify at the trial and the defendants rested at the close of the People's case.

The dissenting Justice concedes that the evidence received at the trial was ample to warrant the verdict. He would reverse, however, on the sole ground that the motion made by the defendants to suppress the two rings found in the possession of Nancy Burgess should have been granted and that they should not have been received in evidence at the trial. She was not indicted as an accomplice and was not a party to the motion to suppress the items of jewelry.

It appears from the testimony given at the suppression hearing held in October, 1967 that at about noon on the day of the burglary an officer observed a four-door 1958 Cadillac sedan in front of his car stopped for a red light, saw a big fellow, identified as defendant Stojek, get out and then the car made an illegal left turn. The car was stopped and the driver's license and registration requested from the operator Kopec, who was unable to produce them. The officer, having observed an assortment of hammers, drill and screw drivers on the floor, became suspicious that the car had been stolen and took the occupants to headquarters for investigation. While checking out the license number of the car he learned from a telephone conversation that the detectives were investigating a burglary. He was asked whether the persons he had brought in had any rings in their possession. The men had already removed their belongings from their persons and put them on the desk; no rings were among them. He then asked the girl (Nancy Burgess), who was sitting in his office, to empty her purse; she did so, and among the contents were some rings and jewelry. Two of the rings were identified that afternoon by the victim of the burglary. There was no proof offered either at the suppression hearing or at the trial identifying Miss Burgess as the woman observed sitting in the car outside the burglary site.

We conclude that defendants had no standing to challenge the search and seizure of the rings which were in the possession of Miss Burgess. Their property was not seized and they, therefore, were not the victims of the search, nor persons against whom the search was directed. They cannot be heard to complain of the violation of the constitutional rights of another.

Section 813-c of the Code of Criminal Procedure provides in part: '' A person claiming to be aggrieved by an unlawful search and seizure * * * may move for the return of such property or for the suppression of its use as evidence.'' As the dissent concedes, the Supreme Court, in *Jones* v. *United States* (362 U. S. 257, 261) has pointed out that in order to be a person aggrieved '' one must have been the victim of a search or seizure, one against whom the search was directed, as distinguished from

one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.'' In the present case, no search was directed at the defendants; they merely stand as persons now claiming prejudice through the use of evidence gathered by the search addressed to the person of Miss Burgess. In these circumstances they do not qualify as persons entitled to challenge the propriety of the search, which Miss Burgess herself has not attacked. The rights against unreasonable searches and seizures secured by the Fourth Amendment are personal rights, which may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure. (*Simmons* v. *United States*, 390 U. S. 377, 389; *People* v. *Cardaio*, 30 A D 2d 843.)

In *United States ex rel. Coffey* v. *Fay* (344 F. 2d 625) quoted and relied on by the dissent, the question of standing was academic, since it was there concluded that the petitioner's Fourth Amendment rights had not been violated because the evidence had been seized in the course of a search incident to an arrest upon probable cause. (See *United States ex rel. Coffey* v. *Fay*, 356 F. 2d 460.) It may also be observed that in *Fay* the arrest was triggered by information that Coffey had possession of the proceeds of the burglary and the search and prosecution was on the theory that defendant was in possession of the stolen property, whereas in our case the police had no information that defendants had possession of the proceeds of the burglary. Furthermore they were not prosecuted for burglary as a result of the discovery of the stolen rings, but as the result of the identification of defendants as the men who had entered the burglarized premises.

Although the rings may have been unlawfully seized from Miss Burgess and might not have been admissible against her, it does not follow from this that they were not admissible against defendants. The seizure of the rings invaded no right of privacy of the persons of the defendants which would entitle them to object to their use at the trial.

In *Alderman* v. *United States* (394 U. S. 165, 171–172) the Supreme Court reaffirmed the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted, and said: '' The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging

evidence. Coconspirators and codefendants have been accorded no special standing.''

In *People* v. *Estrada* (23 N Y 2d 719) the court affirmed a denial of a motion to suppress upon the ground that the movant, charged with possession and sale of narcotics, was not a person '' aggrieved '' with standing to challenge seizure of the narcotics (the only tangible evidence to be offered against him) from another person. This was so even though the actual possessor had himself been successful in obtaining suppression of the evidence as to himself.

The judgments of conviction should be affirmed.

MARSH, J. (dissenting). A serious question is presented as to the legality of a search resulting in the seizure of two rings in the possession of one Nancy Burgess apprehended by the police while in the company of defendants shortly after the commission of the burglary charged. The seizure of the rings as the result of the forced emptying of the handbag of defendants' female companion and their identification by the victims of the burglary as property taken from their home provided an essential link in the People's circumstantial proof of defendants' participation in the crimes charged. The arresting officer, Officer Calabrese, made it clear that no one was placed under arrest when the car in which the woman and the defendants were riding was stopped, and that she was not placed under arrest until after she had emptied her purse at the police station. *People* v. *Rivera* (14 N Y 2d 441) cited by the trial court and relied on by the People, makes clear the distinction between a frisk to detect a concealed weapon and a full search of the person. While in *Rivera* the court upheld the right of an officer to stop and frisk where reasonable police inquiry was indicated, it pointed out that a further search of the person would require sufficient evidence of a committed crime to justify an arrest or that it be incident to a lawful arrest, citing *Harris* v. *United States* (331 U. S. 145).

Here no arrest was made prior to the search and seizure of the items of jewelry in the possession of Miss Burgess. There was only a detention to permit further police inquiry as to possible criminal activity.

As to whether the officer had probable cause to make an arrest prior to discovery of the rings, such cause would have to relate to a crime other than a traffic infraction to justify a search. (*People* v. *Marsh,* 20 N Y 2d 98.) Prior to discovery of the rings and their identification by the owner there had

been no fact of any kind brought to the attention of the police identifying the defendants with the burglary and the identification of the individual defendants at the scene of the crime was not made until the following day. As stated in *People* v. *Albright* (32 A D 2d 878) quoting *Sibron* v. *New York* (392 U. S. 40, 63) : '' It is axiomatic that an incident search may not precede an arrest and serve as part of its justification.''

Nor was there probable cause for an arrest on a stolen car charge. The only relevant fact known to the officers when they brought the defendants into the police station for further investigation was the inability of the driver to produce a driver's license or the car registration. Inquiry of the owner of the car did not result in any complaint that it was stolen, and no charge of car theft was laid. There being no probable cause for arrest at the time of the search resulting in the seizure of the rings, such search was unlawful and the evidence should have been suppressed.

The People challenge the standing of defendants to complain of the alleged unlawful search of Miss Burgess.

The general rule is as stated in *People* v. *Cefaro* (21 N Y 2d 252) and cases cited therein that '' a stranger has no standing to assert that evidence in another's house or premises has been seized unlawfully against the owner or tenant of the premises '', and as phrased in *Jones* v. *United States* (362 U. S. 257, 261) : '' In order to qualify as a ' person aggrieved by an unlawful search and seizure ' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.''

Here, however, each of the defendants and in fact all of the occupants of the car detained for investigation were persons against whom the search of Nancy Burgess was directed and were victims of the search and seizure. Not only was the search directed at evidence by which the police sought to implicate her, but also at evidence implicating those in her company, and the fact of the immediate association of the defendants with her at the time of their apprehension provided the basis for receiving the evidence seized against the defendants as proof of their possession of the stolen articles.

A very similar factual situation is presented in *United States ex rel. Coffey* v. *Fay* (344 F. 2d 625 [C. A. 2d]). There the court held a search to be lawful as incident to a lawful arrest, but overruled the contention of the State that the relator Coffey

lacked standing to object to the lawfulness of the search and seizure. The court held (pp. 628–629):

"According to the rule which governs standing to suppress evidence in a federal prosecution, the defendant must be 'aggrieved by [the] unlawful search and seizure.' Fed. R. Crim. P. 41 (e). This rule 'applies the general principle that a party will not be heard to claim a constitutional protection unless he "belongs to the class for whose sake the constitutional protection is given."' Jones v. United States, 362 U. S. 257, 261, 80 S. Ct. 725, 731, 4 L. Ed. 2d 697 (1960). Because the rule is thus rooted in basic constitutional principle, the same test presumably governs standing to suppress evidence in a state prosecution. 'In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed * * *.' Ibid.

"The arrest and search of Coffey and DeNormand was triggered by information that Coffey had the proceeds of the burglary and would be attempting to dispose of them in DeNormand's company. The two men were arrested while driving in Coffey's car and were simultaneously searched on the sidewalk immediately following the arrest. At the trial both the prosecutor and the Judge told the jury that in assessing Coffey's guilt, it might weigh his physical proximity to the stolen jewels at the time of his arrest.

"We hold that under these circumstances the search which brought the stolen jewels to light was 'directed against' Coffey as well as DeNormand. More precisely, we hold that the State may not arrest, search, and prosecute a defendant on the theory that he is in possession of stolen property, and then object that the property was actually found on the person of a companion when the defendant moves to prevent use of the property as evidence against him."

Similarly in the case at bar the discovery of the stolen rings as the result of the search of the person of defendants' companion apprehended in close physical proximity to the defendants is relied upon by the People as establishing possession of the stolen property not only by the woman searched but also the defendants as well.

I believe that determinative of the issue of standing, on the facts before us, is the holding of the Supreme Court in *Jones* v. *United States* (362 U. S. 257). The defendant there charged with having "purchased, sold, dispensed and distributed" narcotics, had been barred from challenging a search which revealed

the presence of narcotics on premises where he was present, because of his failure when making his motion to suppress to allege that he had a "possessory interest in the premises searched greater than the interest of an invitee or guest". The court held (pp. 263–264): "Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e)."

People v. Estrada (23 N Y 2d 719) does not conflict with the rule laid down in Jones v. United States, and United States ex rel. Coffey v. Fay (supra). In Estrada where the defendant was found not to have been a person aggrieved by a search no charge was made of possession by the defendant of the narcotics seized at the time of the search of a third person. Rather, proof of prior possession by defendant of the same narcotics was made by identification of the package found in the search as the same package in the earlier possession of the defendant.

The guilt of the defendants having been established by the inference the jury was asked to draw and properly could draw that possession of the stolen rings by Nancy Burgess was also possession by her immediate associates, the defendants, the People cannot now assert that the seizure was from her possession alone characterizing the defendants as strangers to the search with no standing to complain of it.

The seizure of the rings having been unlawful, their reception in evidence on the trial constituted reversible error. The judgments should be reversed on the law and a new trial granted.

Gabrielli, Moule and Bastow, JJ., concur with Del Vecchio, J. P.; Marsh, J., dissents and votes to reverse on the law and grant a new trial, in opinion.

Judgments affirmed.